UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CHRISTOPHER GAGE (#424395)                              CIVIL ACTION

VERSUS

LEON JENKINS, ET AL.                                    13-0638-SDD-SCR

### RULING

Before the Court are the Defendants' *Motions for Summary Judgment*[1]. These motions are opposed.[2]

The *pro se* Plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against Capt. Leon Jenkins, Lt. Robert Rowe, Major Eric Hinyard, Lt. Col. Linden Franklin, Sgt. Tywanna Taylor, Sgt. C.B. Johnson, and Cadet Kenneth Jarvis.[3] The Plaintiff alleges that his constitutional rights were violated on November 3, 2012 when he was subjected to excessive force on that date.

The Defendants move for summary judgment relying on the pleadings, statements of undisputed facts, a certified copy of the Plaintiff's criminal proceedings in *State of*

---

[1] Rec. Docs. 56, 79 and 84.
[2] An initial Magistrate Judge Report was entered herein on November 3, 2014 (Rec. Doc. 67), recommending that the *Motion for Summary Judgment* filed on behalf of Defendants Linden Franklin, Eric Hinyard, Leon Jenkins, and Robert Rowe (Rec. Doc. 56) be granted, principally because the Plaintiff had failed to file any opposition thereto or submit any evidence to refute the Defendants' motion. The Court declined to accept the Magistrate Judge's Recommendation, however, and deferred ruling on the referenced motion so as to provide the Plaintiff with an opportunity to pursue additional discovery, if warranted, in light of Fed. R. Civ. P. 56(d) and (e). *See* Rec. Doc. 72. The Plaintiff has now submitted oppositions (Rec. Docs. 83 and 87) to the Defendants' original and supplemental motions for summary judgment (Rec. Docs. 56 and 84), together with supporting evidence, and also an opposition to a similar motion filed on behalf of Defendants, C.B. Johnson and Kenneth Jarvis (Rec. Doc. 79).
[3] The Plaintiff has voluntarily dismissed his claims asserted against defendant Tywanna Taylor. *See* R. Docs. 30 and 61.

*Louisiana v. Christopher Gage*, Case No. 12-WFLN-525, Twentieth Judicial District Court for the Parish of West Feliciana, Louisiana, excerpts from the Plaintiff's deposition taken on August 15, 2014, a copy of a disciplinary report issued against the Plaintiff by Sgt. Tywanna Taylor on November 3, 2012 (charging the Plaintiff with "Contraband," "Defiance" and "Aggravated Disobedience"), copies of the Plaintiff's Master Prison Record and Inmate Location Sheets, copies of excerpts from the Plaintiff's medical records, a copy of an Investigation Report dated January 4, 2013, prepared by Major Michael G. Vaughn (including exhibits), and the affidavits of Latoya Chatman, Ass't Warden Chad Menzina, and Defendants, Robert Rowe, Eric Hinyard, Linden Franklin, Leon Jenkins, C.B. Johnson, and Kenneth Jarvis.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[4]  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[5]  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party could convince a reasonable jury to return a verdict in its favor.[6]  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and

---

[4] Rule 56, Federal Rules of Civil Procedure.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).
[5] *Celotex Corp.,* 477 U.S. at 323.
[6] *Anderson,* 477 U.S. at 248.

unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[7] Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[8] Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.[9] In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[10]

In his Complaint, as amended, the plaintiff alleges that on November 3, 2012, Sgt. Tywanna Taylor discovered him in a dark room in the Main Prison Education Building where he was using a cell phone. Sgt. Taylor conducted a pat down search, found the cell phone in the plaintiff's pocket, and confiscated the cell phone. Sgt. Taylor then escorted the plaintiff to a nearby security booth and contacted her supervisors for assistance. The plaintiff concedes that he then walked toward Sgt. Taylor, causing her to back up against a wall, and used his weight to pin her down, after which he reached into her pocket and retrieved the cell phone. The plaintiff then ran to a nearby bathroom and attempted to flush the cell phone down the toilet.

---

[7] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal citations omitted).
[8] *Celotex Corp.,* 477 U.S. at 323.
[9] *Little,* 37 F.3d at 1075.
[10] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In response to a beeper alert by Sgt. Taylor, Defendants, Leon Jenkins and Robert Rowe, arrived at the scene, at which point the Plaintiff was handcuffed behind his back. The Plaintiff alleges that Sgt. Taylor then struck the Plaintiff several times on his right shoulder and arm, but security officers intervened and stopped her from continuing to do so. The Plaintiff alleges that Defendants, Jenkins and Rowe, then escorted him to administrative segregation in the LSP Main Prison, Cellblock D, where he was taken to an area near the downstairs restroom lobby and was surrounded by the Defendants. According to the Plaintiff, Lt. Rowe repeatedly struck the Plaintiff about the head while asking the Plaintiff why he had hit Sgt. Taylor. The Plaintiff alleges that Defendant Rowe's blows caused his head to strike the bathroom door, injuring his eye and causing his head to bleed. The Plaintiff further alleges that Defendant Jenkins observed the unprovoked attack but failed to intervene on the Plaintiff's behalf.

The Plaintiff alleges that, a few minutes later, Defendants, Eric Hinyard and Linden Franklin, arrived on the unit, and Defendant Hinyard proceeded to strike the Plaintiff about the head while repeatedly asking the Plaintiff why he had hit Sgt. Taylor. The Plaintiff alleges that Defendants Franklin, Jenkins, and Rowe observed the unprovoked attack by Defendant Hinyard, as did two officers assigned to the cellblock, Defendants C.B. Johnson and Kenneth Jarvis, but all of these officers failed to intervene on his behalf.

Finally, the Plaintiff alleges that his handcuffs were removed and he was subjected to a strip search, at which time a cell phone charger was discovered in his underwear. The Plaintiff alleges that he was then fully restrained at his wrists and ankles, and Defendant Franklin then proceeded to repeatedly strike the Plaintiff about the head, and Defendant Hinyard and an unidentified officer proceeded to slam the Plaintiff to the floor,

during which time the Plaintiff was punched and kicked. The Plaintiff alleges that the other officers failed to intervene on his behalf.

Initially, the Court notes that the Plaintiff has named the Defendants in both their individual and their official capacities. Section 1983, however, does not provide a federal forum for a litigant who seeks monetary damages against a state official acting in an official capacity, specifically because such an official is not seen to be a "person" within the meaning of § 1983.[11] In addition, in *Hafer v. Melo*, the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.[12] Accordingly, the Plaintiff's claim asserted against the Defendants in their official capacities for monetary damages is subject to dismissal. In contrast, the Plaintiff's claim for monetary damages asserted against the Defendants in their individual capacities remains viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state.[13]

The Plaintiff's *Complaint*[14] also includes a request for prospective injunctive relief and such a claim, even if asserted against a state official in an official capacity, is allowed to proceed and is not prohibited under the Eleventh Amendment because such a claim is not seen to be a claim against the state.[15] Thus, there is no jurisdictional bar to the Plaintiff's claim for equitable relief asserted against the Defendants. Notwithstanding,

---

[11] *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).
[12] 502 U.S. 21, 25 (1991).
[13] *Id.* at 29.
[14] Rec. Doc. 1.
[15] *See Will,* 491 U.S. at 71, n. 10; 15 *Am. Jur. 2d Civil Rights* § 101.

the Court finds that the Plaintiff's claim for injunctive relief should be denied.  In order to have standing to sue for injunctive relief, a party must (1) have suffered an injury in fact, (2) establish a causal connection between the injury and a defendant's conduct, (3) show that it is likely, not merely speculative, that a favorable decision will redress the injury, and (4) "demonstrate either continuing harm or a real and immediate threat of repeated injury in the future."[16]  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects."[17]  In the instant case, the Plaintiff complains of a single past incidence of alleged excessive force, and there is no showing of any likelihood that the alleged wrongful conduct will be repeated.  Accordingly, the Plaintiff does not have standing to assert a claim for injunctive relief against the Defendants in this case.

Turning to a consideration of the Plaintiff's claim asserted against the Defendants in their individual capacities, the Defendants assert that they are entitled to qualified immunity in connection with this claim.  Specifically, the Defendants contend that the Plaintiff's allegations and evidentiary showing fail to show the existence of a genuine issue of disputed fact relative to any alleged violation of the Plaintiff's constitutional rights.  The Defendants contend that the evidence instead shows that the use of force against the Plaintiff on November 3, 2012 was undertaken solely by Sgt. Tywanna Taylor and was objectively reasonable and justified in response to aggressive conduct by the Plaintiff.  The Defendants assert that the evidence shows that no other force was utilized against the Plaintiff on the referenced date.

The qualified immunity defense is a familiar one and, employing a two-step

---

[16] *Funeral Consumers Alliance, Inc. v. Service Corporation International*, 695 F.3d 330, 342 (5th Cir. 2012).
[17] *O'Shea v. Littleton*, 414 U.S. 488, 495-96, (1974). *See also City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).

process[18], operates to protect public officials who are performing discretionary tasks.[19] As enunciated in *Saucier v. Katz*, the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights.[20]  Second, the district court looks to whether the rights allegedly violated were clearly established.[21]  This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.[22]  The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.[23]  The assertion of the qualified immunity defense alters the summary judgment burden of proof.[24]  Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct."[25]

Undertaking the qualified immunity analysis with respect to the Plaintiff's claim of excessive force, the Court finds that the Defendants' motions for summary judgment should be denied in connection with this claim.   Specifically, the Court finds that there are genuine issues of disputed material fact in this case that are not susceptible to resolution

---

[18] The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.
[19] *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012).
[20] 533 U.S. 194, 201 (2001).
[21] *Id.*
[22] *Id.*
[23] *Id.* at 202.
[24] *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).
[25] *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik,* 422 F.3d at 262.

on motion for summary judgment.

The law is now well-settled that use of force by a prison official is excessive and violates the Eighth Amendment to the United States Constitution only when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline.[26]  Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, however, and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind."[27]   The fact that an inmate may have sustained only minimal injury, however, does not end the inquiry, and an inmate who has been subjected to gratuitous force by prison guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."[28]    Notwithstanding, the Court may consider the extent of injury, if any, as potentially relevant to a determination whether an alleged use of force was excessive under the circumstances.[29]  In addition, other factors that may be considered in determining whether an alleged use of force has been excessive include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response.[30]

In addition to the foregoing, a defendant security officer may be found responsible for a failure to intervene and take reasonable measures to protect an inmate from another

---

[26] *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992).
[27] *Hudson, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986).
[28] *Wilkins, supra*, 559 U.S. at 38.
[29] *Hudson*, 503 U.S. at 7.
[30] *Id.*

officer's excessive use of force.[31]  The test in such instance is whether the observing officer had actual knowledge of a substantial risk of harm to the inmate yet disregarded that risk by failing to take reasonable measures to prevent the resulting harm.[32]  This claim is evaluated under the Eighth Amendment's "deliberate indifference" standard as set forth in *Farmer v. Brennan*.[33]  Under this standard, a prison official is deliberately indifferent if the official is both "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and the official in fact draws that inference.[34]

Applying the foregoing standards, the Court finds that there are genuine disputed issues of material fact regarding the events of November 3, 2012.  As outlined above, the Plaintiff concedes in his administrative grievance, in his *Complaint,* and in sworn declarations provided "under penalty of perjury" that he was admittedly involved in a scuffle with Sgt. Tywanna Taylor involving a cell-phone on that date, during which he admittedly utilized some degree of force and intimidation against the female security officer.  The Plaintiff further concedes that Sgt. Taylor struck the Plaintiff several times during these events, but he asserts that those blows were ineffectual and did not cause injury.  The Plaintiff alleges that Defendants, Leon Jenkins and Robert Rowe, responded to Sgt. Taylor's beeper alert and arrived at the scene shortly thereafter and took control of the Plaintiff, who had been placed in behind-the-back restraints.  Defendants, Jenkins and Rowe, then escorted the Plaintiff to Cellblock D but, instead of placing him in a cell, escorted him to an area in the cellblock lobby "by the downstairs restroom."  The Plaintiff

---

[31] *See Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) *citing Hale v. Townley*, 45 F.3d 914, 916 (5th Cir. 1995).
[32] *Id.*
[33] 511 U.S. 825 (1994); *See e.g. Luken v. Lynaugh,* 98 F.3d 1339 (5th Cir. 1996) (applying the "deliberate indifference" standard in connection with a failure-to-intervene claim).
[34] *Farmer, supra*, 511 U.S. at 837.

attests that, upon being escorted to that area, Defendant Rowe began to repeatedly strike the Plaintiff about the head, asking the Plaintiff, "why did you hit the woman?" According to the Plaintiff, this beating caused a laceration to the Plaintiff's right eye that began to bleed.[35] The Plaintiff complains that Defendant Jenkins observed this use of force by Defendant Rowe but took no action to intervene. Shortly thereafter, Defendants, Eric Hinyard and Linden Franklin, arrived at the scene, and Defendant Hinyard began to strike the Plaintiff about the head, asking the Plaintiff, "why did [you] hit the woman?" Again no intervention was forthcoming from the other officers at the scene, including the two tier security officers who have been identified as Defendants C.B. Johnson and Kenneth Jarvis.[36] The officers then conducted a strip search of the Plaintiff, during which a cell-phone charger was discovered. The Plaintiff asserts that the Defendants then placed him in full restraints, and Defendant Franklin began to strike the Plaintiff about the head, asking why the Plaintiff had hit the female security officer. In addition, Defendant Hinyard, with the help of one of the tier security officers, allegedly slammed the Plaintiff to the floor, placed a knee in the Plaintiff's back, and began to kick and punch the Plaintiff. Again, no intervention was forthcoming from any of the correctional officers in attendance. The Plaintiff's sworn assertions have been corroborated by the sworn statements of several co-inmates who were allegedly housed or working on the cellblock tier on the date of the incident.[37] Although none of these inmates observed the alleged use of force by the Defendants, the co-inmates attest that they heard and recognized the voices of the Plaintiff and the Defendants in the cellblock lobby and also heard numerous sounds of an ongoing beating and of attendant cries of pain. One of the referenced

---

[35] Rec. Doc. 1.
[36] *Id.*
[37] *See* Rec. Doc. 83-5 at pp. 21-33.

co-inmates, Robert Ceasar, attests that he was assigned that evening to clean up the area and observed "blood smears and droplets of blood" in the area of the restroom and the cellblock lobby where the foregoing incidents allegedly occurred.[38]  Inmate Ceasar further attests that he asked Defendants Johnson and Jarvis what had occurred, and both Defendants informed him that "Christopher Gage had hit a woman and had been beaten up earlier in the evening by Lt. Rowe, Major Hinyard and Lt. Col. Franklin."[39]

In response to the Plaintiff's assertions, the Defendants have presented competing sworn affidavits attesting that, on the referenced date, the Plaintiff was involved in a physical altercation with Sgt. Tywanna Taylor, during which Sgt. Taylor utilized necessary and reasonable force to resist intimidation and force used by the Plaintiff after she discovered him in possession of a cell-phone.  According to the Defendants, Sgt. Taylor activated her beeper, and Defendants Jenkins and Rowe responded and escorted the Plaintiff, in behind-the-back restraints, to the lobby of Cellblock D where they were joined by Defendants Hinyard and Franklin and where a strip search was conducted, leading to the discovery of a cell-phone charger on the Plaintiff's person.  According to the Defendants, the only force utilized against the Plaintiff on the date of the incident was that employed by Sgt. Taylor during her scuffle with the Plaintiff over the referenced cell-phone.  In support of their motion for summary judgment, the Defendants point to the alleged minimal nature of the Plaintiff's resulting injuries,[40] to purported inconsistencies

---

[38] *Id.* at p. 30.
[39] *Id.*.

[40] The Plaintiff's medical records reflect that, following the incident, he was examined at the LSP infirmary. The notes generated after this evaluation reflect findings of a laceration to his right temporal area, an abrasion to his right biceps, and a bruise to the back of his head.  A Seri-Strip™ was applied to the laceration, a tetanus shot was administered, a nonsteroidal anti-inflammatory (Toradol®) was prescribed, and a skull x-ray was undertaken (which was interpreted as negative).

in statements made at different times by the Plaintiff, and to the purported unreliability of the sworn statements presented by co-inmates in support of the Plaintiff's allegations.[41]

Notwithstanding the Defendants' contentions, the Court does not find that these contentions are sufficient to eliminate the essential factual dispute between the parties in this case relative to the events of November 3, 2012. The parties have provided competing sworn accounts of the events of the referenced date, and the resolution of the factual disputes will require credibility determinations that are not susceptible to resolution on a motion for summary judgment. The Plaintiff has presented competent summary judgment evidence supporting his claim that each of the Defendants utilized excessive force against him without justification and/or stood by and failed to intervene while such force was utilized against him by others. Notwithstanding the purported minor objective injuries noted in the Plaintiff's medical records, the Court has previously noted that an absence of serious injuries is not alone sufficient to defeat a claim of excessive force. Further, the purported inconsistencies noted by the Defendants are more appropriately addressed by the Defendants in seeking to impeach the Plaintiff's credibility, or that of his witnesses, on cross-examination at trial. Accordingly, these purported inconsistencies are not sufficient to warrant a conclusive determination at this stage of the proceedings that the Plaintiff will be unable to recover in connection with his claim. Accordingly, the Defendants' motions for summary judgment shall be denied.

---

[41] The inconsistencies and discrepancies relied upon by the Defendants include, *inter alia,* the purported inability of the Plaintiff's co-inmates to have heard what they allege to have heard in their sworn statements and the Plaintiff's failure to mention, in certain statements made after the incident, the alleged excessive force utilized by the Defendants. The Court notes, however, that the Plaintiff submitted an administrative grievance to prison officials that appears to have been dated November 5, 2012, two days after the incident complained of, in which he provided a relatively detailed account of the alleged excessive force. *See* Rec. Doc. 83-5 at pp. 1-5.

Accordingly, based on the foregoing,

**IT IS HEREBY ORDERED** that the Plaintiff's claims asserted against the Defendants in their official capacities are hereby **DISMISSED.**

**IT IS FURTHER ORDERED** that the Defendants' *Motions for Summary Judgment*[42] are hereby **DENIED**, and this matter is hereby referred back to the Magistrate Judge for further proceedings in connection with the Plaintiff's claim that the Defendants, in their individual capacities, violated his Eighth Amendment constitutional rights on November 3, 2012.

Signed in Baton Rouge, Louisiana on  September 24, 2015 .

                                                                  */s/ Shelly D. Dick*

                                **JUDGE SHELLY D. DICK**
                                **UNITED STATES DISTRICT COURT**
                                **MIDDLE DISTRICT OF LOUISIANA**

---

[42] Rec. Docs. 56, 79, and 84.