# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**CHRISTOPHER GAGE (#424395)**                      **CIVIL ACTION**

**VERSUS**

**LEON JENKINS, ET AL.**                            **NO. 13-0638-SDD-EWD**

## RULING

Before the Court is Plaintiff's Motion in Limine (R. Doc. 127), pursuant to which he seeks various forms of relief, some of which have already been addressed by the Court and will not be revisited. In this regard, the Court has previously addressed and disposed of Plaintiff's requests (1) to exclude the expert testimony of Dr. Randy Lavespere, (2) to exclude reference to Plaintiff's criminal record and prison disciplinary record, (3) to allow the introduction into evidence of other crimes or bad acts of defense witnesses, and (4) to allow a co-inmate to assist Plaintiff at trial. *See* R. Docs. 109 and 145. Accordingly, the Court will deny these aspects of Plaintiff's instant motion as moot and will address only Plaintiff's request to exclude the testimony at trial of defense expert witness Kerry J. Najolia. Defendants have filed an Opposition to Plaintiff's Motion in this respect (R. Doc. 131), and the Motion has been referred to the undersigned for resolution (R. Doc. 132).

*Pro se* Plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against Capt. Leon Jenkins, Lt. Robert Rowe, Major Eric Hinyard, Lt. Col. Linden Franklin, Sgt. Tywanna Taylor, Sgt. C.B.

Johnson and Cadet Kenneth Jarvis.[1]   Plaintiff alleges that his constitutional rights were violated on November 3, 2012, when he was subjected to excessive force on that date.   Specifically, he asserts that he and Officer Tywanna Taylor were first admittedly involved in a physical confrontation on that date when Officer Taylor discovered Plaintiff in possession of a prohibited cellphone, when she confiscated the cellphone, and when Plaintiff thereafter overpowered her to regain the cellphone and to run to a nearby restroom to attempt to dispose of it.   Plaintiff was then taken into custody by officers who arrived on the scene in response to Officer Taylor's beeper alert, was placed in restraints, and was escorted by Defendants Leon Jenkins and Robert Rowe to a different area of the prison, Cellblock D.   According to Plaintiff, Defendant Rowe then subjected Plaintiff to additional force in the form of blows about the head, and additional officers also arrived, Defendants Eric Hinyard and Linden Franklin, who also subjected Plaintiff to applications of force.   According to Plaintiff, Defendants Leon Jenkins, C.B. Johnson and Kenneth Jarvis were present and observed the use of force by Defendants Rowe, Hinyard and Franklin but failed to intervene to prevent the use of force.

Plaintiff now challenges the admissibility of testimony by Defendants' expert witness, Kerry J. Najolia, and requests a hearing relative to the admission of the expert's testimony at trial in accordance with *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).   Plaintiff challenges Najolia's testimony as being unreliable because not based on any personal knowledge of the pertinent events.   Plaintiff asserts that Najolia's report merely recites and accepts as true Defendants' self-serving version of the facts and, in doing so, expresses an unreliable opinion that Defendants' actions were reasonable and

---

1 Plaintiff has voluntarily dismissed his claims asserted against Defendant Tywanna Taylor.   *See* R. Docs. 30 and 61.

justified under the circumstances, without substantive analysis or scientific basis or methodology.

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)     the testimony is based on sufficient facts or data;

(c)     the testimony is the product of reliable principles and methods; and

(d)     the expert has reliably applied the principles and methods to the facts of the case.

Pursuant to its express terms, Rule 702 does not render all expert testimony admissible. *United States v. Scavo*, 593 F.2d 837, 844 (8th Cir. 1979). Further, even if the proposed expert testimony satisfies each of the elements set forth in the Rule, the testimony may still be excluded pursuant to the discretionary provisions of Fed R. Evid. 403, which allow a Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

When a *Daubert* challenge is made to the testimony of a proposed expert, a district court may, but is not required, to hold a hearing at which the proffered opinion may be challenged. *Carlson v. Bioremedi Therapeutic Systems, Inc.*, 822 F.3d 194, 201 (5th Cir. 2016). When a hearing is not held, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry." *Id.* "At a minimum, a district court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting [or denying] expert testimony.'" *Id.*

The role of the trial court is to serve as the gatekeeper for expert testimony by making a determination whether the expert opinion is reliable. As the Fifth Circuit has explained:

[W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at

issue in the case. *Daubert* went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance." The Court summarized:

> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997) (internal citations omitted). The

cases following *Daubert* have expanded upon the listed factors and have explained that the list is

not all-encompassing and that not every factor is required in every case. *See, e.g., General*

*Electric Co. v. Joiner*, 522 U.S. 136, 143 (1997); *Guy v. Crown Equipment Corp.*, 394 F.3d 320,

325 (5th Cir. 2004). Indeed, courts may look to other factors as well. *See General Electric Co.*

*v. Joiner, supra*, 522 U.S. at 146. In *Fayard v. Tire Kingdom, Inc.*, 2010 WL 3999011, *1 (M.D.

La. Oct. 12, 2010), this Court explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert*, which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

*Id*. (internal citation omitted).

This Court has broad discretion in deciding whether to admit expert opinion testimony.

*See, e.g., General Electric Co. v. Joiner, supra*, 522 U.S. at 138-39 (holding that an appellate

court's review of a trial court's decision to admit or exclude expert testimony under *Daubert* is

made under the abuse of discretion standard); *Watkins v. Telsmith, Inc. supra*, 121 F.3d at 988

(holding that "[d]istrict courts enjoy wide latitude in determining the admissibility of expert testimony"); *Hidden Oaks Ltd. V. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence").

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Johnson v. Samsung Electronics America, Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011), *citing* Fed. R. Evid. 702 Advisory Committee Note (2000 amend.). Further, as explained in *Scordill v. Louisville Ladder Group., L.L.C.*, 2003 WL 22427981 (E.D. La. Oct. 24, 2003):

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"

*Id*. at *3 (internal citations omitted).

The Supreme Court has also recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise and the subject of his testimony." *Kumho Tire Co., Ltd. v. Carmichael, supra*, 526 U.S. at 150. In that vein, the Fifth Circuit has concluded that certain "soft sciences" involve "necessarily diminished methodological precision" when compared to other scientific disciplines like mathematics and engineering. *United States v. Simmons*, 470 F.3d 1115 (5th Cir. 2006):

> In such instances, other indicia of reliability are considered under *Daubert*, including professional experience, education, training, and observations. Because there are areas of expertise, such as the "social sciences in which the research, theories and opinions cannot have the exactness of hard science methodologies", trial judges are given broad discretion to determine "whether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case".

*Id*. at 1123 (internal citations omitted).

In applying the foregoing analysis in evaluating the proposed testimony and report of Kerry Najolia, the Court concludes that the expert testimony of this witness should be disallowed. Specifically, Najolia opines almost entirely relative to the purported "reasonableness" of Officer Tywanna Taylor's actions in initially confronting Plaintiff while in possession of a cellphone on November 3, 2012, in confiscating the cellphone, in engaging in a physical confrontation with Plaintiff when he overpowered her and regained possession of the cellphone, and in calling for backup assistance from other officers, who arrived and took control of Plaintiff, placing him in restraints and escorting him to a different area of the prison, Cellblock D. These essential facts, however, are not actually disputed in this case, and Officer Taylor is no longer a Defendant herein. As such, the reasonableness of Officer Taylor's actions in those respects is not at issue. Plaintiff in fact concedes that he and Officer Taylor engaged in a physical confrontation and that Officer Taylor struck him several times before he was escorted from the area. While a critical question in this case will be whether Plaintiff's alleged injuries were the result of his admitted confrontation with Officer Taylor or instead the result of blows later allegedly inflicted by Defendants, Kerry Najolia is not in a position to provide reliable expert opinion testimony as to whether Defendants *subsequently* utilized force against Plaintiff or as to when and how Plaintiff sustained injury or the extent thereof. Rather, the officers on the scene, all of whom are slated to testify, were in the best position to personally observe Plaintiff's condition and demeanor when they arrived to assist Officer Taylor, and the medical witnesses in this case are in the best position to testify as to the

nature and severity of Plaintiff's injuries. The expert report of Najolia does little to address the determinative question in this case, *i.e.,* whether Defendants subjected Plaintiff to further applications of force *after* escorting him to the Cellblock D lobby and/or observed that use of force and failed to take any action to prevent it. Whereas Najolia is admittedly "an overwhelmingly qualified expert in law enforcement" (as conceded by Plaintiff, *see* R. Doc. 127 at p. 5), his opinions relative to events *preceding* Plaintiff's arrival at Cellblock D will not likely assist the jury in determining whether Defendants violated Plaintiff's constitutional rights upon arrival at that location. In fact, Najolia offers little in the way of opinion relative to events occurring at Cellblock D other than to state that, "[i]f the trier of fact determines that physical force was used after Mr. Gage was restrained for the purpose of causing pain and/or suffering, that force would be unauthorized, in violation of LSP policy, training guidelines and state and/or federal statue [sic]." Thus, instead of basing his opinion upon any particular methodology applied to the events of November 3, 2012, Najolia essentially engages in a credibility determination and accepts, without any basis in fact, Defendants' version of events and their assertion (1) that no force whatever was used by them against Plaintiff and (2) that Plaintiff's injuries were solely the result of the confrontation with Officer Taylor.

The Court concludes that the proposed testimony of Kerry Najolia relative to the foregoing does not meet the test for the allowance of expert opinion evidence. As noted above, Fed. R. Evid. 702 allows for the introduction of such evidence when "the expert's scientific, technical, or other specialized knowledge *will help the trier of fact to understand the evidence or to determine a fact in issue*." (Emphasis added). Whereas Najolia is unquestionably a qualified expert in the area of law enforcement, training and use-of-force, his opinion as to the reasonableness of Officer Taylor's actions prior to the events complained would nonetheless be of little assistance to the jury

in understanding the evidence or in reaching its own resolution of the factual question whether Defendants utilized force thereafter. Even Najolia concedes that if Defendants utilized force against Plaintiff without justification upon arrival at Cellblock D, the use of force would have been unreasonable. Thus, in simply accepting Defendants' version of the facts in this case, Najolia's report artificially bolsters and potentially elevates Defendants' version of the facts without any apparent basis for such enhanced credibility. This presents the type of danger that the gatekeeping function of *Daubert* is intended to alleviate, *i.e.,* the danger that the purported expert testimony will receive unwarranted weight and will encourage the fact-finder to give more weight to one side's contention than is warranted. Accordingly, the Court finds that the testimony of Kerry Najolia will not reliably assist the jury in resolving this contested issue in this case and should therefore be excluded as to this issue. *Cf., Harris v. City of Baton Rouge*, 2005 WL 60009992 (M.D. La. April 8, 2005) (disallowing testimony by Kerry Najolia "concerning the *reasonableness of the actions of the police officer* in making [an] arrest" (emphasis added)); *Chauvin v. Sheriff Harry Lee of Jefferson Parish*, 2000 WL 1537988 (E.D. La. Oct. 16, 2000) (granting plaintiff's motion in *limine* "to exclude the testimony and report of purported expert Kerry Najolia" after defendants advised the court that they would not oppose the motion).

Accordingly, based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion in Limine (R. Doc. 127) is hereby **GRANTED IN PART** such that the expert testimony of Kerry J. Najolia shall be disallowed, and **OTHERWISE DENIED AS MOOT**.

Signed in Baton Rouge, Louisiana, on May 18, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**